**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **GREGORY CHARLES GOODSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CORE REAL ESTATE PARTNERS LLC,** | ) | **Civil Action No.** |
| **GUESTHOUSES, LLC,** | ) | **3:26-cv-00099-JHY-JCH** |
| **CVILLAS AND ESTATES, LLC,** | ) | |
| **ANDREW THOMASSON, and** | ) | |
| **SUNSET LODGE INVESTMENTS LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF CORE REAL ESTATE AND SUNSET LODGE'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS


I. **INTRODUCTION** .......... 1

II. **STATEMENT OF THE ALLEGATIONS** .......... 2

A. **The parties.** .......... 2

B. **The March 2023 Estimate.** .......... 3

C. **The March 2023 Agreement.** .......... 3

D. **The Ivy Cottages photographs.** .......... 4

E. **The accused uses.** .......... 4

III. **LEGAL STANDARD** .......... 5

IV. **ARGUMENT** .......... 8

A. **Count I Fails as to the Moving Defendants Because the License Pleaded in the FAC Authorizes Every Use the FAC Alleges.** .......... 8

1. *By Plaintiff's own allegation, the Photographs were licensed on the terms of the Agreement.* .......... 8

2. *Every accused act is reproduction, display, or distribution "for promotional or advertising purposes directly related to the sale of the property location."* .......... 9

3. *The licensed right to "distribute" the Photographs for sale advertising necessarily authorizes the recipients to use them for that advertising.* .......... 10

4. *The Estimate does not change the result.* .......... 12

5. *Dismissal should be with prejudice.* .......... 12

B. **In the Alternative, Plaintiff's Grievance Sounds in Contract, Not Copyright, and Lies Only Against the Contracting Parties.** .......... 12

C. **The FAC Alleges No Conduct by Sunset Lodge.** .......... 14

D. **Count II Fails to State a Claim for Contributory Infringement.** .......... 15

1. *The FAC does not plausibly allege a direct infringement by any third party.* .......... 15

2. *The FAC does not allege knowledge of specific infringing activity.* .......... 16

3. *"Refus[ing] to remove" content from websites Defendants do not control is not inducement or material contribution.* .......... 17

4. *Count II duplicates Count I.* .......... 18

E. **Plaintiff's Demand for Attorney's Fees, and Any Claim to Statutory Damages, Is Barred by 17 U.S.C. § 412.** .......... 18

V. **CONCLUSION** .......... 20

Defendants Core Real Estate Partners LLC (“Core”) and Sunset Lodge Investments LLC (“Sunset Lodge”) (collectively, “Moving Defendants”), by counsel, submit this Memorandum in support of their Motion to Dismiss Plaintiff’s First Amended Complaint (ECF No. 4) (the “FAC”) under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

This is a copyright case in which the plaintiff has pleaded all of the allegations which prove the defense. Plaintiff Gregory Charles Goodson, a real estate photographer, alleges that in November 2023 he was hired by Guesthouses, Cvillas, and Thomasson to photograph a property at 3500 Sunset Lodge Court in Charlottesville, and that the engagement was “governed by the same Agreement terms” as his prior work for those clients. (FAC ¶¶ 15–16.) He then quotes the Agreement. It grants the client “the limited right to reproduce, publicly display, and distribute the photographs only for promotional or advertising purposes directly related to the sale of the property location.” (FAC ¶ 14.)

The conduct Goodson sues over is the use of those photographs to advertise that property, 3500 Sunset Lodge, for sale. He alleges that Guesthouses, Cvillas, and Thomasson gave the photographs to Core “for use in a ‘For Sale’ listing for 3500 Sunset” (FAC ¶ 23); that Core posted them to the local multiple listing service to promote “a ‘For Sale’ listing for 3500 Sunset” (FAC ¶ 27); that Core posted them to its social media accounts in connection with that listing (FAC ¶ 33); and that a Core agent later passed them to a successor brokerage “for the purpose of promoting a ‘For Sale’ listing for 3500 Sunset” (FAC ¶ 36).

In each case, the Plaintiff is admitting that the Moving Defendants used the photographs for exactly the purpose for which they were licensed. Each of those acts is reproduction, public display, or distribution “for promotional or advertising purposes directly related to the sale of the

property location." While the FAC labels each of these acts as a "direct violation of Agreement," it never says how. The reason it does not, and cannot, is because they are authorized under the Agreement. A complaint that alleges licensed use does not allege infringement, and the Complaint should be dismissed as to the Moving Defendants.

The FAC's remaining defects are independent grounds for dismissal. Sunset Lodge is named in the caption and nowhere else; no act is attributed to it. Count II, for contributory infringement, identifies no third-party infringer, no knowledge of specific infringing activity, and no inducement or material contribution—and the FAC's own quoted source says the third-party broadcaster it complains of got the listing from the public MLS through unrelated investors. And Plaintiff's demand for attorney's fees is barred by 17 U.S.C. § 412, because the FAC alleges that the infringement commenced in September 2024 and that the photographs were not registered until February 2026.

Moving Defendants ask the Court to dismiss the FAC with prejudice as to them.

## II. STATEMENT OF THE ALLEGATIONS

The following facts are drawn from the FAC and are assumed true solely for purposes of this Motion.

### A. The parties.

Goodson is a commercial real estate photographer in Charlottesville. (FAC ¶ 1.) Core is a Virginia real estate brokerage; Guesthouses and Cvillas are Virginia limited liability companies; Thomasson is an individual whom the FAC describes as an agent of Core, the owner and operator of Cvillas, and the general manager of Guesthouses; and Sunset Lodge is a Virginia limited liability company. (FAC ¶¶ 2–6, 20–22.) Sunset Lodge Investments is mentioned exactly twice – in the

case caption and in the recitation of parties; the FAC attributes no act, statement, or omission to Sunset Lodge.

**B. The March 2023 Estimate.**

On March 25, 2023, Goodson sent Guesthouses, Cvillas, and Thomasson an "Estimate" for photography of two other properties, 932 Monticello Avenue and 209 2nd Street SW. (FAC ¶¶ 10–11.) The FAC alleges that the Estimate "governed the proposed photography shoots and corresponding limited license . . . for the real properties located at" those two addresses. (FAC ¶ 11.) The Estimate described a "non-exclusive, perpetual license to use the final images for the purpose of marketing and promoting your short-term vacation rental properties," stated that the photographs "may not be sublicensed, resold, or distributed to third parties without the prior written consent," and stated that the images "may not be used for any purpose beyond the promotion of the properties for which they were originally created." (FAC ¶ 12.)

**C. The March 2023 Agreement.**

Two days later, on March 27, 2023, Goodson and Guesthouses, Cvillas, and Thomasson "executed an agreement ('Agreement')" for the same two properties. (FAC ¶ 13.) The Agreement provides, in the portion quoted in the FAC:

> Upon image distribution or images purchased off your online web gallery, limited copyright ownership and a standard business license of the resulting images will be transferred to the CLIENT under the following conditions: This contract provides the CLIENT with the limited right to reproduce, publicly display, and distribute the photographs only for promotional or advertising purposes directly related to the sale of the property location. Photographs used for any purpose not directly related to the sale of the property location must be with the express permission of PHOTOGRAPHER and the payment of additional fees, unless otherwise agreed to in writing. The CLIENT must obtain written permission from -- and compensate PHOTOGRAPHER -- prior to the CLIENT or the CLIENT's friends, relatives, team members and employees publishing or selling the photographs for profit.

(FAC ¶ 14.)

**D. The Ivy Cottages photographs.**

The FAC alleges that after the March 2023 shoots, Goodson and Guesthouses, Cvillas, and Thomasson "worked together on other photography shoots, which were governed by the same Agreement terms." (FAC ¶ 15.) Before November 20, 2023, Guesthouses, Cvillas, and Thomasson hired Goodson to photograph 3500 Sunset Lodge Court, Charlottesville ("3500 Sunset"), and on that date he captured forty-five photographs titled "Ivy Cottages-1" through "Ivy Cottages-46" (the "Photographs"). (FAC ¶¶ 16–17.) The FAC does not allege that any estimate, invoice, or other writing specific to the 3500 Sunset shoot imposed terms different from the Agreement. Indeed, by alleging they were "distributed… in direct violation of Agreement" (FAC ¶23), Goodson has alleged they were subject to its terms. Goodson registered the Photographs on February 5, 2026. (FAC ¶ 18.)

**E. The accused uses.**

The Plaintiff effectively pleads that every use made of the Photographs by the Moving Defendants concerns the marketing of 3500 Sunset for sale:

- Before September 11, 2024, Guesthouses, Cvillas, and Thomasson "distributed Copyrighted Photographs to Core for use in a 'For Sale' listing for 3500 Sunset." (FAC ¶ 23.)
- On or about September 11, 2024, the Photographs were posted to the Charlottesville Area Association of Realtors multiple listing service ("CAAR"), "promoting a 'For Sale' listing for 3500 Sunset," and CAAR in turn syndicated the listing to third-party websites such as realtor.com and ratemyagent.com. (FAC ¶¶ 26–29.)

- On September 27, 2024, a local YouTube program, "The I Love CVille Network," displayed the Photographs in an episode discussing the listing. (FAC ¶¶ 30–31.) The FAC quotes the host's explanation of how he came to have the listing: it "just hit" the "[p]ublic MLS's" and "has been circulated to me now on three occasions by three different folks that we work alongside or do business with, that invest in real estate." (FAC ¶ 32.)
- On October 2, 2024, Core posted the Photographs to its Facebook and Instagram accounts in connection with the listing. (FAC ¶ 33.)
- On October 20, 2025, Maggie Holloway, a Core agent, emailed a Google Drive link containing the Photographs to three agents of Cushman & Wakefield | Thalhimer ("Cushman"), stating, "Here is the information I had from listing it last year," and Cushman thereafter used the Photographs "for the purpose of promoting a 'For Sale' listing for 3500 Sunset" on its own website and on commercial listing sites. (FAC ¶¶ 34–38.)

The FAC characterizes each of these uses as being "in direct violation of Agreement" (FAC ¶¶ 23, 27, 29, 36, 38), but it does not identify any term of the Agreement that the uses violate. It alleges that Goodson first discovered the uses on or about January 28, 2026, and first "notified Defendants in writing" on February 5, 2026. (FAC ¶¶ 40–41.) It does not allege that any Moving Defendant received notice of Goodson's position before that date, that any sale of 3500 Sunset occurred, or that any Moving Defendant earned anything from the listing.

## III. LEGAL STANDARD

To survive a motion under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts well-pleaded facts as true, but "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). In this Circuit, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *see Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("naked assertions" of wrongdoing "necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief'" (quoting *Twombly*, 550 U.S. at 557)). Because liability turns on each defendant's own conduct, a complaint must plausibly allege what each defendant did. *See Iqbal*, 556 U.S. at 676–77 (plaintiff "must plead that each . . . defendant, through the [defendant's] own individual actions, has violated" the law).

Three further principles govern consideration of this Motion. First, although a Rule 12(b)(6) motion "generally cannot reach the merits of an affirmative defense," such a defense "may be reached by a motion to dismiss" where "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Second, in evaluating the complaint the Court considers "documents that are explicitly incorporated into the complaint by reference," *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016), as well as documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic," *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Third, under the "exhibit-prevails rule," "in the event of conflict between the bare

allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Goines*, 822 F.3d at 166 (quoting *Fayetteville Invs. v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). The rule has particular force where the plaintiff's claim rests on a contract: "if a breach-of-contract plaintiff alleges a failure to perform an act required by the contract, the contract's description of the defendant's duties will prevail over the plaintiff's contrary characterization," and "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, . . . crediting the document over conflicting allegations in the complaint is proper." *Id.* at 166–67.

A claim for copyright infringement requires a plaintiff to "show that it owns a valid copyright, and . . . establish that the defendant engaged in unauthorized copying of the work protected by the copyright." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002); *see Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 537 (4th Cir. 2015). Use that the copyright owner has licensed is, by definition, not unauthorized[1]: "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998); *see Nelson-Salabes*, 284 F.3d at 514 (license is a defense to infringement). And "when the contested issue is the scope of a license, rather than the existence of one, the copyright owner bears the burden of proving that the defendant's copying was unauthorized under the license." *Graham*, 144 F.3d at 236.

The scope of a license is determined by state contract law. *See id.* at 237. Under Virginia law, whether contract language is ambiguous "is a question of law," and "[w]hen an agreement is plain and unambiguous on its face, the Court will not look for meaning beyond the instrument

[1] Counsel apologizes for the use of the double negative, but it is intentional. The law requires that a Plaintiff prove a use is unauthorized, so the analysis is whether an alleged use is (or is not) unauthorized.

itself." *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 263 Va. 624, 631–32, 561 S.E.2d 663, 667–68 (2002). "[A] contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." *Id.* at 632, 561 S.E.2d at 668 (quotation omitted). "The court must give effect to all of the language of a contract if its parts can be read together without conflict. Where possible, meaning must be given to every clause." *Berry v. Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983). And "[i]n the event of an ambiguity in the written contract, such ambiguity must be construed against the drafter of the agreement." *Martin & Martin, Inc. v. Bradley Enters., Inc.*, 256 Va. 288, 291, 504 S.E.2d 849, 851 (1998).

## IV. ARGUMENT

### A. Count I Fails as to the Moving Defendants Because the License Pleaded in the FAC Authorizes Every Use the FAC Alleges.

#### *1. By Plaintiff's own allegation, the Photographs were licensed on the terms of the Agreement.*

The FAC pleads the license. It alleges that Goodson and Guesthouses, Cvillas, and Thomasson "executed an agreement" in March 2023 (FAC ¶ 13); that their later shoots "were governed by the same Agreement terms" (FAC ¶ 15); and that the shoot at 3500 Sunset was one of those later engagements. FAC ¶ 16.

The FAC then quotes the operative terms. Under the Agreement, "limited copyright ownership and a standard business license of the resulting images" pass to the client upon delivery, and the client receives "the limited right to reproduce, publicly display, and distribute the photographs only for promotional or advertising purposes directly related to the sale of the property location." FAC ¶ 14.

The FAC does not allege that any different or narrower terms attached to the 3500 Sunset engagement. It does not allege that an estimate, invoice, or any other writing accompanied that

shoot. The only other license language it pleads – the March 25, 2023 Estimate – is, by the FAC's own description, confined to "the real properties located at" 932 Monticello Avenue and 209 2nd Street SW. (FAC ¶ 11.)

Plaintiff has thus committed himself to the position that the Agreement's terms define what his licensees and those acting with them could do with the Photographs. Having pleaded the license (and in particular its specific language), he is bound by what it says: where a plaintiff's claim rests on a contract, "the contract's description of the defendant's duties will prevail over the plaintiff's contrary characterization." *Goines*, 822 F.3d at 166; *see Goodman*, 494 F.3d at 464. And because the FAC itself establishes the existence of the license, the only question is its scope—a question on which Goodson "bears the burden of proving that the defendant's copying was unauthorized under the license." *Graham*, 144 F.3d at 236.

2. *Every accused act is reproduction, display, or distribution "for promotional or advertising purposes directly related to the sale of the property location."*

The Agreement's grant is not narrow in the respect that matters here. It authorizes three things: reproduction, public display, and distribution – so long as they serve one purpose: promoting or advertising the sale of the property depicted.

Measured against that grant, each act in the FAC is licensed:

- <u>Delivery to Core for the listing</u> (FAC ¶ 23): The FAC alleges that the licensees "distributed Copyrighted Photographs to Core for use in a 'For Sale' listing for 3500 Sunset." Distribution of the Photographs to a real estate broker so that the broker can list the property for sale is "distribut[ion] . . . for promotional or advertising purposes directly related to the sale of the property location." It is the paradigm of the licensed use.

- <u>The MLS listing and its syndication</u> (FAC ¶¶ 26–29): Posting the Photographs to the multiple listing service "promoting a 'For Sale' listing for 3500 Sunset," and the resulting

appearance of the listing on realtor.com and similar sites, is public display and distribution for the advertising of the sale. The FAC's own description of the purpose is "promoting a 'For Sale' listing" – language which tracks the license.

- Core's social media posts (FAC ¶ 33): Core's October 2, 2024 posts, which the FAC's exhibits show were captioned with the listing price and MLS number, are advertising "directly related to the sale of the property location."

- The transfer to the successor brokerage (FAC ¶¶ 34–38): Holloway's October 2025 transmission of "the information I had from listing it last year" to Cushman, which the FAC alleges was used "for the purpose of promoting a 'For Sale' listing for 3500 Sunset," is again distribution for the licensed purpose. The license does not limit the number of brokers who may advertise the sale, and the FAC does not allege otherwise.

The FAC's repeated assertion that these acts were "in direct violation of Agreement" is "a legal conclusion couched as a factual allegation" that the Court is "not bound to accept as true." *Twombly*, 550 U.S. at 555 (quotation omitted); *see Iqbal*, 556 U.S. at 678. It is also contradicted by the Agreement's text as the FAC quotes it, and when a plaintiff "relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *Goines*, 822 F.3d at 166 (quotation omitted); *see Fayetteville Invs.*, 936 F.2d at 1465.

*3. The licensed right to "distribute" the Photographs for sale advertising necessarily authorizes the recipients to use them for that advertising.*

Plaintiff may have intended to allege/argue that only the named "CLIENT" could use the Photographs, and that Core, Cushman, the MLS, and the listing websites needed licenses of their own. However, even if asserted such argument is in vain because the Agreement forecloses that reading. It grants the client the right to "distribute" the Photographs "for promotional or advertising purposes directly related to the sale of the property location."

A right to distribute photographs to others so that the property can be advertised for sale is meaningless unless the recipients may display them in that advertising; brokers and listing services do not advertise a property by keeping its photographs in a drawer. Virginia law does not permit a construction that renders an express grant inoperative: "[w]here possible, meaning must be given to every clause." *Berry*, 225 Va. at 208, 300 S.E.2d at 796. Courts construing analogous licenses have held that a licensee's delivery of licensed images to downstream parties for the licensed purpose carries with it an authorization for those parties to use the images for that purpose. *See Photographic Illustrators Corp. v. Orgill, Inc.*, 953 F.3d 56, 61–64 (1st Cir. 2020) (where photographer's license permitted the licensee to sublicense its product photographs, licensee's conduct in supplying the photographs to its distributor for marketing of the same products impliedly sublicensed the distributor, and distributor's use was not infringement). The Agreement's own text makes that result explicit here.

The Agreement's final sentence – requiring permission before the client or its "friends, relatives, team members and employees" engage in "publishing or selling the photographs for profit" – does not alter the analysis. That sentence addresses the exploitation of the Photographs themselves as a commodity (publishing for profit or selling the photographs), not advertising the property with them, which the preceding sentence expressly permits. Reading "publishing . . . for profit" to encompass every commercial real estate advertisement would nullify the grant of the right to "publicly display" the Photographs "for promotional or advertising purposes directly related to the sale." The specific grant controls; and if the two sentences could be read to conflict, the ambiguity is resolved against Goodson, who drafted the form. *Martin & Martin*, 256 Va. at 291, 504 S.E.2d at 851.

4. *The Estimate does not change the result.*

The FAC confines the Estimate to the two Monticello Avenue and 2nd Street properties. (FAC ¶ 11.) It does not allege that the Estimate was ever sent for, accepted for, or applied to the 3500 Sunset shoot, and it alleges that the later shoots were governed by "the same Agreement terms"—not by the Estimate. (FAC ¶ 15.)

Moreover, even were the Estimate's language relevant, it would not help Plaintiff. The Estimate describes a "perpetual" license to use the images in "property listings," "social media," "website, and other print and digital materials" for the "promotion of the properties for which they were originally created." (FAC ¶ 12.) A listing offering 3500 Sunset for sale is a "property listing" promoting the property for which the images were created.

5. *Dismissal should be with prejudice.*

The deficiency in Count I is not a missing fact that further pleading could supply. It is the content of the license that Plaintiff drafted, executed, and chose to plead. Because the FAC establishes that the accused uses were authorized, Count I fails as to every Moving Defendant and should be dismissed with prejudice.

### B. In the Alternative, Plaintiff's Grievance Sounds in Contract, Not Copyright, and Lies Only Against the Contracting Parties.

Even if the Court were to read one of Plaintiff's documents as restricting the licensees' ability to share the Photographs with a broker, the FAC would still fail to state a claim for infringement.

"A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham*, 144 F.3d at 236. Whether a licensee's departure from a license term is nonetheless actionable as infringement "turns . . . on the distinction in contract between a condition and a covenant." *Id.* If the licensee's conduct

"constitutes a breach of a covenant undertaken by the [licensee] . . . then the [licensor] will have a cause of action for breach of contract," not copyright infringement; only where the violation "consists of a failure to satisfy a condition to the license" is the licensee's use "without authority from the licensor." *Id.* at 236–37 (quoting 3 Nimmer on Copyright § 10.15[A]).

*Graham* applied "a presumption that terms of a contract are covenants rather than conditions." *Id.* at 237 (applying New York law). Thus, where a photographer's license restricts how the licensee may use or credit the images but does not condition the grant itself on compliance, a breach "is a bone that [the photographer] needs to pick . . . with [the licensee], not [the licensee's downstream recipient]." *Photographic Illustrators*, 953 F.3d at 64. The only restriction Plaintiff could invoke against the sharing of the Photographs with Core is the Estimate's statement that the images "may not be sublicensed, resold, or distributed to third parties without the prior written consent." (FAC ¶ 12.) Nothing in that sentence makes the existence or scope of the "perpetual" license contingent on compliance. It is a promise about how the licensees would handle the images, and if the licensees broke that promise, Plaintiff's remedy is a claim for breach of contract against the parties who made it. The FAC pleads no such claim.

The FAC alleges that the Estimate was sent to, and the Agreement executed by, Guesthouses, Cvillas, and Thomasson. (FAC ¶¶ 10, 13.) It does not allege that Core or Sunset Lodge agreed to anything, saw either document, or knew of any restriction in them. The FAC's assertion that Core "possessed direct knowledge it did not secure a proper license" (FAC ¶ 24) is a bare conclusion unsupported by any alleged fact, and it is irrelevant in any event: the question under Count I is whether the use was authorized, not whether the user knew the terms of the authorization. As shown in Part I, the FAC itself establishes that the licensees were authorized to distribute the Photographs for sale advertising and that Core received and used them for exactly

that purpose. A recipient who uses a work within the scope of the authorization the copyright owner gave the licensee is not an infringer, and the FAC alleges no fact suggesting that Core or Sunset Lodge did anything else.

**C. The FAC Alleges No Conduct by Sunset Lodge.**

Sunset Lodge is named in the caption and identified in the parties section. (FAC ¶ 6.) That is the last time the FAC mentions it. The FAC does not allege that Sunset Lodge hired Goodson, received the Photographs, reproduced them, displayed them, distributed them, posted them, sent them to anyone, owned or operated any website or account on which they appeared, or had any relationship with Goodson at all. Every specific act in the FAC is attributed to Guesthouses, Cvillas, and Thomasson (FAC ¶¶ 10–16, 23), to Core and its agent Holloway (FAC ¶¶ 25–27, 33–38), or to non-parties (FAC ¶¶ 29–32, 36–38).

The only allegations that could be read to reach Sunset Lodge are those that refer collectively to "Defendants." (E.g., FAC ¶¶ 27–30, 39, 43, 48–49, 52, 55–56.) Pleading of that kind does not satisfy Rule 8. A complaint must plausibly allege that each defendant, through its own conduct, violated the law, *see Iqbal*, 556 U.S. at 676–77, and must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (quotation omitted); it cannot lump five defendants together and leave each to guess what it is accused of. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The collective allegations are also implausible on their face as to Sunset Lodge: the FAC alleges that the Photographs were posted to the MLS by a member brokerage (FAC ¶¶ 26–27), posted to social media by Core (FAC ¶ 33), and sent to Cushman by a Core agent (FAC ¶¶ 34–35). Sunset Lodge is not alleged to be any of those actors.

Because the FAC pleads no act by Sunset Lodge that could constitute direct infringement (Count I) or knowing contribution to another's infringement (Count II), all claims against Sunset Lodge should be dismissed.

**D. Count II Fails to State a Claim for Contributory Infringement.**

Contributory infringement is a form of secondary liability. Under that doctrine, "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another" may be held liable for the infringement. *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)); *see ALS Scan, Inc. v. RemarQ Cmtys., Inc.*, 239 F.3d 619, 621 n.1 (4th Cir. 2001). The claim thus requires (1) a direct infringement by a third party, (2) the defendant's knowledge of that infringing activity, and (3) conduct by the defendant that induces, causes, or materially contributes to it. "One infringes contributorily by intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). The Fourth Circuit has held that "proving contributory infringement requires proof of at least willful blindness; negligence is insufficient," *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 310 (4th Cir. 2018), and that the required knowledge must be of "specific instances of infringement," with "specific enough knowledge of infringement that the defendant could do something about it." *Id.* at 312. Count II fails on each element (and is duplicative of Count I besides).

*1. The FAC does not plausibly allege a direct infringement by any third party.*

Count II never identifies who the direct infringer is supposed to be. The candidates in the FAC are the MLS and the listing websites to which it syndicates (FAC ¶¶ 27–29), the YouTube program (FAC ¶¶ 30–32), and Cushman (FAC ¶¶ 36–38). As to the MLS, the listing websites, and

Cushman, their use of the Photographs was the advertising of 3500 Sunset for sale, which the Agreement authorizes. (Part I, *supra*.) If their use was licensed, there is no direct infringement to which any Defendant could have contributed.

As to the YouTube program, the FAC alleges in conclusory terms that "Defendants distributed Copyrighted Photographs" to it. (FAC ¶ 30.) That allegation identifies no Defendant, no date, and no means of distribution; it is the kind of "naked assertion[]" that requires "further factual enhancement" before it may be credited. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The only factual content the FAC offers on the point is the host's own account, which the FAC quotes: the listing "just hit" the "[p]ublic MLS's" and "has been circulated to me now on three occasions by three different folks that we work alongside or do business with, that invest in real estate." (FAC ¶ 32.) Whether or not that account is credited for its truth, *see Goines*, 822 F.3d at 167–68, the FAC pleads no fact connecting any of those individuals, or the program, to any Defendant. Nothing in the FAC "nudge[s]" the assertion of distribution by Defendants "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

*2. The FAC does not allege knowledge of specific infringing activity.*

The FAC alleges that Defendants "possessed actual and/or constructive knowledge" that their dissemination infringed. (FAC ¶ 55.) That is a recitation of the element, not a fact, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The facts the FAC does plead point the other way: the licensees had a written license from Goodson (FAC ¶¶ 13–15); the Photographs were used for the purpose that license describes; and Goodson did not communicate any objection to anyone until February 5, 2026 (FAC ¶ 41), more than sixteen months after the MLS listing and more than three months after the transmission to

Cushman. Nothing in the FAC suggests that any Defendant (much less the Moving Defendants) knew, or deliberately avoided learning, that a third party was engaged in specific infringing activity. "Constructive" knowledge is not the standard. The Fourth Circuit has identified the "constructive knowledge" formulation as a negligence standard and held that "negligence does not suffice to prove contributory infringement; rather, at least willful blindness is required." *BMG*, 881 F.3d at 308 & n.4; *see id.* at 310–12.

3. *"Refus[ing] to remove" content from websites Defendants do not control is not inducement or material contribution.*

The only conduct Count II describes which even implies actual knowledge of infringement is that Defendants "have refused to remove all incidents of infringement." (FAC ¶ 56.) The "incidents" the FAC identifies are pages on realtor.com, ratemyagent.com, YouTube, and Cushman's listing platforms. (FAC ¶¶ 29–32, 36–38, 43.) The FAC does not allege that any Defendant owns, operates, or can edit those third-party sites. A failure to procure the removal of content from someone else's website is not an act that induces or causes infringement, and it is not the kind of participation that the law treats as material contribution. The inducement rule "premises liability on purposeful, culpable expression and conduct," and "mere knowledge of infringing potential or of actual infringing uses would not be enough." *Grokster*, 545 U.S. at 937; *see CoStar*, 373 F.3d at 550. To the extent the FAC means that the Photographs remain visible on third-party sites that cached or syndicated a listing posted in 2024, that continued visibility is the conduct of those sites, not any volitional act by Moving Defendants. Direct liability requires "actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the [defendant] himself trespassed on the exclusive domain of the copyright owner"; a defendant must "engage in volitional conduct—specifically, the act constituting infringement—to become a direct infringer." *CoStar*, 373 F.3d at 550–51.

*4. Count II duplicates Count I.*

Stripped of labels, Count II rests on the same acts as Count I: the licensees' delivery of the Photographs to Core, Core's posting of them to the MLS and social media, and Holloway's transmission to Cushman. The FAC simply recharacterizes Moving Defendants' own alleged reproduction and distribution as "contribution" to the downstream displays those acts produced. A secondary-liability claim that adds nothing to the direct claim but a new caption should be dismissed. And because the predicate acts are licensed (Part I), Count II fails for the same reason Count I does.

**E. Plaintiff's Demand for Attorney's Fees, and Any Claim to Statutory Damages, Is Barred by 17 U.S.C. § 412.**

Section 412 of the Copyright Act provides that no award of statutory damages or of attorney's fees under sections 504 and 505 shall be made for any infringement of copyright in an unpublished work commenced before the effective date of its registration, or for any infringement commenced after first publication of the work and before the effective date of its registration, unless registration is made within three months after first publication. 17 U.S.C. § 412(1)–(2).

The FAC alleges the relevant timeline. The Photographs were created on November 20, 2023. (FAC ¶ 17.) The alleged infringement commenced, at the latest, when the Photographs were delivered to Core "[p]rior to September 11, 2024" and posted to the MLS "[o]n or about September 11, 2024." (FAC ¶¶ 23, 27.) Goodson did not register the Photographs until February 5, 2026. (FAC ¶ 18.) Whichever prong of § 412 applies, the registration came nearly seventeen months after the infringement is alleged to have begun, and more than three months after any date on which the Photographs could be said to have been first published.

The Fourth Circuit has held that "infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs," and that "[t]he

post-registration activities make no difference." *Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 330 (4th Cir. 2007) (quoting *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998)). Because the statute treats infringers who are liable jointly and severally the same as a single infringer, "it is appropriate to treat the earliest date of infringement by any participant in a line of related copyright violations as the date of commencement." *Id.* at 331. Accordingly, "a copyright owner may not obtain statutory damages from a licensee liable jointly and severally with a licensor when the licensor's first infringing act occurred before registration and was part of the same line of related infringements that included the licensee's offending act." *Id.* Other circuits apply the same rule, and apply it to attorney's fees, which § 412 treats identically. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 701–02 (9th Cir. 2008) ("the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412," and plaintiff therefore "is not entitled to its attorneys' fees to the extent that they are based upon a violation of the Copyright Act"); *S. Credentialing Support Servs., L.L.C. v. Hammond Surgical Hosp., L.L.C.*, 946 F.3d 780, 785–87 (5th Cir. 2020) (bar applies even where post-registration conduct violates a different exclusive right than the pre-registration conduct; remanding for judgment "without statutory damages or attorney's fees"). Every act in the FAC—the MLS listing, the social media posts, the syndication to third-party sites, and the transmission to Cushman—is part of a single continuing course of conduct that began with the 2024 listing and that the FAC itself links together as "Defendants' unauthorized use." (FAC ¶¶ 23–43.) Indeed, the FAC alleges that the 2024 listing and social media posts remained on display when the FAC was filed. (FAC ¶ 43.)

Because the bar appears on the face of the FAC, the Court should dismiss Plaintiff's demand for attorney's fees under § 505 (FAC, Prayer ¶ d) and foreclose any claim to statutory

damages under § 504(c). What remains available to Plaintiff (were the FAC not otherwise deficient) would be what § 412 leaves available: "injunctive relief, actual damages, and infringement profits." *Bouchat*, 506 F.3d at 331. The FAC's request for a declaration that the alleged infringement was "willful" (FAC, Prayer ¶ b) should be dismissed for the same reason: willfulness bears on the amount of statutory damages, 17 U.S.C. § 504(c)(2), and serves no purpose where statutory damages are unavailable.

## V. CONCLUSION

The FAC pleads a license whose terms authorize the only use it complains of, attributes no conduct to Sunset Lodge, identifies no third-party infringement to which any Defendant knowingly contributed, and seeks fees that the Copyright Act forbids. For the reasons stated, Moving Defendants respectfully request that the Court dismiss the First Amended Complaint in its entirety and with prejudice. In the alternative, Moving Defendants request that the Court dismiss Count II, dismiss all claims against Sunset Lodge Investments LLC, and dismiss Plaintiff's demand for attorney's fees, a willfulness declaration, and any statutory damages.

Respectfully submitted,

CORE REAL ESTATE PARTNERS LLC
SUNSET LODGE INVESTMENTS LLC

By Counsel

/s/ David W. Thomas
David W. Thomas, Esq. (VSB No. 73700)
MichieHamlett PLLC
310 4th Street NE, 2nd floor
Charlottesville, Virginia 22902
P: (434) 951-7224
F: (434) 951-7244
dthomas@michiehamlett.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ David W. Thomas___________________
David W. Thomas, Esq. (VSB No. 73700)