**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **GREGORY CHARLES GOODSON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CORE REAL ESTATE PARTNERS LLC,**<br>**CVILLAS AND ESTATES, LLC,**<br>**ANDREW THOMASSON, and**<br>**SUNSET LODGE INVESTMENTS LLC,**<br><br>**Defendants.** | ) | **Civil Action No.**<br>**3:26-cv-00099-JHY-JCH** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS**
**CVILLAS AND ESTATES LLC AND ANDREW THOMASSON'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Cvillas and Estates, LLC ("Cvillas") and Andrew Thomasson ("Thomasson") (collectively, the "Licensee Defendants"), by counsel, submit this Memorandum in support of their Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 4) (the "FAC") under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

The Licensee Defendants are two of the three parties to whom, by the FAC's own account, Plaintiff Gregory Charles Goodson granted a license to use the photos. Goodson alleges that he sent them his Estimate (FAC ¶ 10), that they executed his Agreement (FAC ¶ 13), that their later shoots "were governed by the same Agreement terms" (FAC ¶ 15), and that they hired him to photograph 3500 Sunset Lodge Court (FAC ¶ 16). They are, in the Agreement's words, the "CLIENT" to whom "a standard business license of the resulting images" was "transferred." (FAC ¶ 14.)

The FAC attributes exactly one act to the Licensee Defendants: before September 11, 2024, they "distributed Copyrighted Photographs to Core for use in a 'For Sale' listing for 3500 Sunset." (FAC ¶ 23.) This is the act their license most plainly permits. Everything else the FAC describes is attributed to Core, to Core's agent, or to non-parties. (FAC ¶¶ 25–38.) As Plaintiff admits, the Agreement grants the client "the limited right to reproduce, publicly display, and distribute the photographs only for promotional or advertising purposes directly related to the sale of the property location." (FAC ¶ 14.) Handing the photographs to a real estate broker so that the broker can list the property for sale is distribution for promotional purposes directly related to the sale of the property. A licensee who does what its license permits does not infringe.

Co-defendants Core Real Estate Partners LLC ("Core") and Sunset Lodge Investments LLC ("Sunset Lodge") have moved to dismiss the FAC on grounds that apply equally to the Licensee Defendants. (ECF Nos. 13, 14.) To spare the Court duplicative briefing, the Licensee Defendants adopt that motion and memorandum (Part II below) and confine this Memorandum to the grounds that are particular to them (Part III).

## II. THE LICENSEE DEFENDANTS ADOPT AND INCORPORATE THE ARGUMENTS IN ECF NOS. 13 AND 14

The Licensee Defendants adopt and incorporate by reference, as if fully set forth herein, the Motion to Dismiss filed by Core and Sunset Lodge (ECF No. 13) and the Statement of the Allegations, the Legal Standard, and Parts IV.A, IV.B, IV.D, and IV.E of the Memorandum in Support of that Motion (ECF No. 14) (the "Core Memorandum"). *See* Fed. R. Civ. P. 10(c). Each of those arguments applies to the Licensee Defendants with at least the force it has for Core and Sunset Lodge:

**A. Part IV.A (the license pleaded in the FAC authorizes every use alleged).**

The Core Memorandum shows that the Agreement Goodson quotes licenses reproduction, display, and distribution of the Photographs "for promotional or advertising purposes directly related to the sale of the property location," and that each act the FAC describes is such a use. (ECF No. 14, Part IV.A, at 8–12.) The Licensee Defendants are the licensees themselves, and the only act attributed to them—delivering the Photographs to a broker for a sale listing—is the licensed act of distribution.

**B. Part IV.B (any grievance sounds in contract, not copyright).**

The Core Memorandum explains that a licensor "waives his right to sue the licensee for copyright infringement," that a licensee's departure from a license term is actionable as infringement only if the term is a condition of the grant rather than a covenant, and that the Estimate's "third parties" sentence is a covenant. (ECF No. 14, Part IV.B, at 12–14.) That analysis is addressed to the Licensee Defendants directly, because they are the parties to the Estimate and the Agreement. The FAC pleads no contract claim against them.

**C. Part IV.D (Count II fails).**

The FAC identifies no third-party infringement, no knowledge of specific infringing activity, and no inducement or material contribution, and Count II merely relabels Count I. (ECF No. 14, Part IV.D, at 15–18.) As to the Licensee Defendants, the point is sharper still: the only "contribution" the FAC attributes to them is the licensed delivery of the Photographs to Core.

**D. Part IV.E (17 U.S.C. § 412 bars attorney's fees and statutory damages).**

The FAC alleges that the infringement commenced before September 11, 2024 and that the Photographs were not registered until February 5, 2026. (FAC ¶¶ 18, 23, 27.) The bar applies with

particular clarity to the Licensee Defendants, whose only alleged act is the earliest in time. (ECF No. 14, Part IV.E, at 18–20.)

## III. ADDITIONAL GROUNDS SPECIFIC TO THE LICENSEE DEFENDANTS

### A. The Only Act Attributed to the Licensee Defendants Is the Licensed Act of Distributing the Photographs to a Broker for the Sale of the Property.

A copyright plaintiff must "establish that the defendant engaged in unauthorized copying of the work protected by the copyright." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002). As to the Licensee Defendants, the FAC pleads the opposite. It alleges that Goodson licensed the Photographs to them on the Agreement's terms (FAC ¶¶ 13–16). The FAC quotes a grant that expressly includes the right to "distribute the photographs . . . for promotional or advertising purposes directly related to the sale of the property location" (FAC ¶ 14), and then alleges that the Licensee Defendants "distributed" the Photographs to Core "for use in a 'For Sale' listing" for the property (FAC ¶ 23). It is the FAC that pleads a perfect match between the actions permitted by the license and the actions actually undertaken by the Licensee Defendants.

The FAC's only response is to append the label "in direct violation of Agreement" to paragraph 23. That is "a legal conclusion couched as a factual allegation" that the Court is "not bound to accept as true," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted), and it is contradicted by the Agreement's text as the FAC itself quotes it. Where a plaintiff's claim rests on a contract, "the contract's description of the defendant's duties will prevail over the plaintiff's contrary characterization." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Nor does the FAC allege that the Licensee Defendants reproduced, displayed, or distributed the Photographs anywhere else, or for any purpose other than the sale of 3500 Sunset.

The MLS posting, the social media posts, and the transmission to Cushman are all attributed to Core and its agent. (FAC ¶¶ 25–27, 33–35.)

Because the FAC establishes that the Licensee Defendants held a license and alleges no use outside it, the burden of showing otherwise rests with Goodson: "when the contested issue is the scope of a license, rather than the existence of one, the copyright owner bears the burden of proving that the defendant's copying was unauthorized under the license." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998). The FAC pleads no fact that would carry that burden. Count I therefore fails as to the Licensee Defendants, and because the language of the license and the actions alleged are what they are, the dismissal should be with prejudice.

### B. Delivering the Photographs to the Brokerage Engaged to Sell the Property Is Not a Sublicense, a Resale, or a Distribution to a "Third Party," and Any Breach of the Estimate Would Sound Only in Contract.

The Estimate, by the FAC's own account, governed only the two other properties. (FAC ¶ 11; *see* ECF No. 14, Part IV.A.4, at 12.) But even if its terms applied to the Photographs, they would not make the Licensee Defendants infringers. The sentence Goodson would invoke provides that the images "may not be sublicensed, resold, or distributed to third parties without the prior written consent." (FAC ¶ 12.) The FAC does not allege a sublicense or a sale of the Photographs. It alleges that the licensees gave the Photographs to the brokerage[1] engaged to list the property for sale "for use in a 'For Sale' listing." (FAC ¶ 23.) A party that engages a broker to sell its property and furnishes the broker with marketing materials has not distributed those materials to a "third party" in any ordinary sense of that phrase; the broker acts for it. Indeed, the exclusive right the Copyright Act confers is the right "to distribute copies . . . of the copyrighted work *to the public*," 17 U.S.C. § 106(3) (emphasis added), and a private delivery of the Photographs to one's own

[1] A brokerage of which Thomasson is, by the FAC's own description, an agent (FAC ¶ 20)

broker is not a distribution to the public at all. And the Estimate itself contemplates exactly this kind of use, licensing the images for "property listings," "social media," "website, and other print and digital materials." (FAC ¶ 12.)

In any event, as the Core Memorandum explains, the sentence is a covenant, not a condition of the grant. (ECF No. 14, Part IV.B, at 12–14.) "A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement," and where a licensee's conduct "constitutes a breach of a covenant . . . then the [licensor] will have a cause of action for breach of contract," not copyright infringement. *Graham*, 144 F.3d at 236–37 (quotation omitted). The Licensee Defendants are the only parties against whom such a contract claim could even theoretically be asserted, and the FAC does not assert one. The Licensee Defendants do not concede that any term of the Estimate or the Agreement was breached. Instead, the point is that Goodson has chosen to plead a claim for copyright infringement, and the facts he pleads do not support one.

### C. The Collective Allegations Against "Defendants" Do Not State a Claim Against Cvillas.

Apart from paragraph 23 and the paragraphs describing the licensing relationship (FAC ¶¶ 10–16), the FAC never mentions Cvillas in connection with any accused use. The allegations that "Defendants" posted the Photographs to CAAR (FAC ¶ 27), "represented" to CAAR that they had the right to do so (FAC ¶ 28), "distributed" the Photographs to a YouTube channel (FAC ¶ 30), and "failed to cease their infringing activity" (FAC ¶ 43) lump all five defendants together. As the Core Memorandum explains with respect to Sunset Lodge (ECF No. 14, Part IV.C, at 14–15), pleading of that kind does not satisfy Rule 8. A complaint must plausibly allege that each defendant, through its own conduct, violated the law, *see Ashcroft v. Iqbal*, 556 U.S. 662, 676–77

(2009), and must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (quotation omitted).

The collective allegations are also implausible as to Cvillas on the FAC's own terms. Only a member brokerage posts listings to the MLS, and the FAC identifies that brokerage as Core and its agent Holloway (FAC ¶¶ 25–27); the social media accounts were Core's (FAC ¶ 33); the Google Drive link was sent by Holloway (FAC ¶¶ 34–35); and the FAC's own quoted source states that the YouTube program obtained the listing from the public MLS through unrelated investors (FAC ¶ 32). Nothing in the FAC plausibly suggests that Cvillas did any of those things.

### D. The Claims Against Thomasson Individually Fail for Additional Reasons.

The FAC sues Thomasson on three theories: as a licensee who, with Guesthouses (voluntarily dismissed by Plaintiff) and Cvillas, delivered the Photographs to Core (FAC ¶ 23); as the "dominant influence" in Guesthouses and Cvillas who "determined and/or directed the policies that led to the infringements" (FAC ¶ 50); and as vicariously liable for those entities' conduct because he had "the right and ability to control" them and "a direct financial interest" in their activities (FAC ¶ 51). The first theory fails for the reasons stated in Part III.A: a licensee who distributes the licensed work for the licensed purpose does not infringe.

The second and third theories are derivative, and they are conclusory. They presuppose an infringement by Guesthouses and Cvillas; because the only act attributed to those entities is licensed, there is nothing for Thomasson to have directed or profited from. Both theories are also pleaded "[u]pon information and belief" in the language of the elements. Vicarious liability requires that the defendant "(1) possessed the right and ability to supervise the infringing activity; and (2) possessed an obvious and direct financial interest in the exploited copyrighted materials." *Nelson-Salabes*, 284 F.3d at 513. The FAC identifies no "policy" Thomasson set, no decision he

made concerning the Photographs, and no financial benefit he received from the listing of 3500 Sunset (which listing the FAC does not allege produced a sale, a commission, or any revenue to anyone). An allegation that an individual owns or manages a company, without more, does not plead a direct financial interest in a particular infringement. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," *id.* at 678–79.

Finally, the FAC's description of Thomasson as "an agent of Core" (FAC ¶ 20) adds nothing. The FAC does not allege that Thomasson listed the property, posted the Photographs to the MLS or to social media, or sent them to Cushman; it attributes each of those acts to Holloway or to Core. (FAC ¶¶ 25–27, 33–35.)

**E. Count II Fails as to the Licensee Defendants.**

The Licensee Defendants adopt Part IV.D of the Core Memorandum. Two points bear emphasis. First, the only act the FAC attributes to the Licensee Defendants – delivering the Photographs to Core for the sale listing – is licensed, and a licensed act cannot be the "material[] contribut[ion] to the infringing conduct of another" that contributory liability requires. *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (quotation omitted).

Second, the FAC alleges no fact suggesting that the Licensee Defendants knew of, or were willfully blind to, any specific infringing activity by anyone. It alleges that they held a written license (FAC ¶¶ 13–15), that Goodson communicated no objection to anyone until February 5, 2026 (FAC ¶ 41), and that the "incidents" he wants removed appear on websites that no Licensee Defendant is alleged to own, operate, or control (FAC ¶¶ 29–32, 36–38, 43). Contributory infringement requires "at least willful blindness," *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns,*

*Inc.*, 881 F.3d 293, 308 (4th Cir. 2018), to "specific instances of infringement," *id.* at 312. Count II pleads neither.

**F. Section 412 Bars Attorney's Fees and Statutory Damages.**

The Licensee Defendants adopt Part IV.E of the Core Memorandum. The FAC alleges that the Licensee Defendants' delivery of the Photographs to Core occurred "[p]rior to September 11, 2024" (FAC ¶ 23)—the first act in the series Goodson describes—and that he registered the Photographs on February 5, 2026 (FAC ¶ 18). Because "infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs," *Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 330 (4th Cir. 2007) (quotation omitted), no statutory damages or attorney's fees are available against the Licensee Defendants, and the demand for them (FAC, Prayer ¶¶ b, d) should be dismissed.

**IV. CONCLUSION**

For the reasons stated above and in ECF Nos. 13 and 14, the Licensee Defendants respectfully request that the Court dismiss the First Amended Complaint as to Cvillas and Thomasson with prejudice. In the alternative, the Licensee Defendants request that the Court dismiss Count II, dismiss all claims against Andrew Thomasson, and dismiss Plaintiff's demand for attorney's fees, a willfulness declaration, and any statutory damages.

Respectfully submitted,

CVILLAS AND ESTATES, LLC
ANDREW THOMASSON

By Counsel

/s/ David W. Thomas
David W. Thomas, Esq. (VSB No. 73700)
MichieHamlett PLLC
310 4th Street NE, 2nd floor
Charlottesville, Virginia 22902
P: (434) 951-7224
F: (434) 951-7244
dthomas@michiehamlett.com
*Counsel for Core Real Estate Partners LLC, Sunset Lodge Investments LLC, Cvillas and Estates, LLC, and Andrew Thomasson*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ David W. Thomas
David W. Thomas, Esq. (VSB No. 73700)